UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LORI H.,

                       Plaintiff,

      v.                                           3:20-CV-1303
                                                           (DJS)

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security,*[1]

                     Defendant.
_____

**APPEARANCES:**                                   **OF COUNSEL:**

LACHMAN & GORTON                   PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 89
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.      NATASHA OELTJEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, MA 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is substituted as Defendant here pursuant to FED. R. CIV. P. 25(d). The Clerk is directed to modify the docket accordingly.

## **MEMORANDUM-DECISION AND ORDER**[2]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 9 & 14. Plaintiff has also filed a Reply Brief. Dkt. No. 17. Both parties agree that remand is necessary, however, Plaintiff has requested remand for calculation of benefits only, while Defendant asserts that remand for further proceedings is the proper course of action. For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings consistent with this decision.

### I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1968. Dkt. No. 8, Admin. Tr. ("Tr."), p. 178. Plaintiff reported that she has an associate's degree. Tr. at p. 50. She has past work experience as an activity leader for a county agency, a dental assistant, a pharmacy technician and trainer, and as a seasonal sales cashier. Tr. at p. 220. On her initial application for disability, Plaintiff alleged disability due to chronic fatigue, fibromyalgia, Lyme Disease, Epstein Barr, and unspecified thyroid and immune system conditions. Tr. at p.

---

[2] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

231.  Primarily at issue in this appeal, however, is the somatic symptom disorder with which Plaintiff has been diagnosed.  Tr. at p. 968.

## B.  Procedural History

Plaintiff initially applied for disability benefits on Oct. 15, 2014.  Tr. at p. 1001.  She alleged a disability onset date of July 1, 2012.  Tr. at p. 178.  Plaintiff's application was initially denied on December 24, 2014, after which she timely requested a hearing.  Tr. at p. 16.  On September 6, 2017, ALJ Elizabeth W. Koennecke issued a decision finding that Plaintiff was not disabled.  Tr. at p. 27.  Plaintiff appealed this decision to the Appeals Council, which denied the request for review, Tr. at p. 1019, and then to the U.S. District Court.  Tr. at p. 1027.  On April 12, 2019, Judge David E. Peebles granted Plaintiff's motion for judgment on the pleadings and ordered remand in order to have a psychiatric medical expert examine Plaintiff's medical records to determine whether she suffered from a somatic symptom disorder that substantially limited her in her ability to perform work-related functions.  Tr. at pp. 1027-1028.

Following that remand, ALJ Koennecke sent a medical interrogatory to Joseph G. Vitolo, M.D., asking whether, based upon the evidence provided, Plaintiff had met her burden to establish a medically-determinable impairment categorized as a somatic disorder.  Tr. at pp. 1215-1216.  In addition to the interrogatory, another hearing occurred on February 12, 2020, at which a vocational expert testified.  Tr. at pp. 979-989.  The ALJ determined that the expert's method for providing individual job title numbers was "inadequate," and therefore a subsequent hearing was held on June 8, 2020

with another vocational expert.  Tr. at pp. 991-997.  Following those proceedings, ALJ Koennecke issued a second decision on August 17, 2020, again finding that Plaintiff was not disabled.  Tr. at pp. 956-970.  This appeal followed.

### C. The ALJ's Decision

In her decision, the ALJ made the following findings of fact and conclusions of law.  First, the ALJ found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 2016, and that she had not engaged in substantial gainful activity since July 1, 2012, the alleged onset date, through her last-insured date.  Tr. at p. 958.  Second, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, atrial fibrillation, and hypothyroidism, and "a mental impairment that has been variously characterized (20 CFR 404.1520(c))."  Tr. at p. 959.  Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at p. 960.  Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> lift twenty pounds continuously, fifty pounds frequently and one hundred pounds occasionally; carry twenty pounds continuously and fifty pounds frequently; sit eight hours at a time and in a workday; stand eight hours at a time and in a workday; and walk eight hours at a time and in a workday. The [Plaintiff] could continuously use her hands and feet. The [Plaintiff] could never climb and she could occasionally balance; however, she did not have any other postural limitations. She could never work at unprotected heights or around moving mechanical parts. She could not operate a motor vehicle. The [Plaintiff] could have frequent exposure

> to humidity, dust, odors, wetness, fumes, pulmonary irritants, vibrations, and temperature extremes. The [Plaintiff] retains the ability to understand and follow simple instructions and directions; perform simple tasks independently; maintain attention and concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; handle simple, repetitive work-related stress in that the [Plaintiff] can make occasional decisions directly related to the performance of simple tasks in a stable, unchanging work environment.

Tr. at p. 963.

Fifth, the ALJ found that Plaintiff did not have any past relevant work. Tr. at p. 968. Sixth, the ALJ found that Plaintiff was categorized as a "younger individual" at the time of the alleged disability onset date. *Id.* Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. at pp. 968-970.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied

correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably

6

have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can

be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Both parties agree that remand is necessary in this case. Pl.'s Mem. of Law at p. 1, Def.'s Mem. of Law at p. 1. However, they disagree as to what the purpose of remand should be. *Id.* Plaintiff has asserted that remand should be for calculation of benefits only while Defendant maintains that remand for further proceedings is the proper remedy. As an initial matter, the Court agrees with both parties that remand is necessary. Defendant concedes that whether Plaintiff has a somatic symptom disorder is no longer in dispute — rather, the question is whether she has established the presence of a listings-level impairment for this condition. Def.'s Mem. of Law at p. 6. Defendant further concedes that the ALJ erred in evaluating this impairment, and in evaluating the related opinion of Dr. Vitolo. *Id.*

Remand is appropriate in cases where, as here, the ALJ has applied an improper legal standard. *Murphy v. Saul*, 2021 WL 1318044 at *1 (citing *Rosa v. Callahan*, 168 F. 3d 72, 82-83 (2d Cir. 1999)). In evaluating Plaintiff's somatic disorder symptoms, the ALJ appeared to require objective evidence, both from Plaintiff and from the medical opinions provided. Tr. at pp. 961-962, 965, 967. This was error. *Lori H. v. Berryhill*, 2019 WL 1578195, at *4 (N.D.N.Y. Apr. 12, 2019) ("[I]t is inappropriate to reject the existence of somatoform disorder and its disabling effects based upon the lack of objective evidence alone.") However, "a remand solely for the calculation of benefits

8

is an extraordinary action." *Murphy v. Saul*, 2021 WL 1318044 at *1 (E.D.N.Y. April 8, 2021) (quoting *Rivera v. Barnhart*, 423 F. Supp. 2d 271, 279 (S.D.N.Y. 2006)).  As a result, a remand solely for calculation of benefits is appropriate only where the record "provide[s] persuasive evidence of total disability that [would render] any further proceedings pointless." *Selian v. Astrue*, 708 F.3d 409, 420 (2d Cir. 2013) (quoting *Williams v. Apfel*, 204 F.3d 48, 50 (2d Cir. 2000).  *See, e.g., Rivera v. Barnhart*, 923 F.2d at 970 ("[T]he record fails to reveal any evidence which could support a finding that Rivera was capable of performing substantial gainful work which was available in the national economy."); *Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (award of benefits appropriate when there was "infinitesimal likelihood" of employment) (superseded by regulation on other grounds); *Arroyo v. Callahan*, 973 F. Supp. 397, 400 (S.D.N.Y. 1997) ("the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose") (internal quotations omitted).  As these cases demonstrate, this is a demanding standard, reserved for cases where the record conclusively establishes both a total disability and an inability to work.  This is because "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Parker v. Harris*, 626 F. 2d 225, 231 (2d Cir. 1980).

Plaintiff claims that remand for calculation of benefits only is appropriate here because two of the medical opinions submitted by Defendant's experts "satisfy Plaintiff's burden of demonstrating disability."  Pl.'s Mem. of Law at pp. 12-13.  Defendant, however, asserts that questions of fact remain as to whether Plaintiff's

symptoms met the criteria to establish a listings-level impairment. Def.'s Mem. of Law at p. 9.

At issue here is Social Security Listing 12.07 – Somatic Symptom and Related Disorders. Part A of the listing criteria requires medical documentation of one or more of the following:

> 1. Symptoms of altered voluntary motor or sensory function that are not better explained by another medical or mental disorder
> 2. One or more somatic symptoms that are distressing, with excessive thoughts, feelings, or behaviors related to the symptoms; or
> 3. Preoccupation with having or acquiring a serious illness without significant symptoms present

Defendant does not dispute that the Part A criteria has been satisfied. Def.'s Mem. of Law at pp. 7, 10. However, the Plaintiff must also satisfy Part B of the listing criteria, which Defendant does dispute. Part B requires extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

> 1. Understand, remember, or apply information
> 2. Interact with others
> 3. Concentrate, persist, or maintain pace
> 4. Adapt or manage oneself

Although Dr. Vitolo indicated in his medical interrogatory that Plaintiff met the listing criteria for 12.07, and that she had marked limitations in three of the four Part B areas of mental functioning, and moderate limitations in a fourth, Tr. at p. 1217, those findings are disputed. Tr. at pp. 961, 968. The ALJ found that Dr. Vitolo's conclusions on this matter had little support in the record, and that his opinion lacked specific

10

citations to evidence in the record. Tr. at pp. 961-962, 968. Despite the fact that at least some of the ALJ's reasons for discounting Dr. Vitolo's opinion were improper, the ultimate decision of whether to accept his findings is the role of the ALJ and not this Court.

Moreover, the record is not as uncontested as Plaintiff asserts. For instance, Plaintiff claims that "[e]veryone who formed an opinion found Plaintiff would be off task more than 33% of the day and absent more than four days per month," which would be "well beyond employer tolerance." Pl.'s Mem. of Law at p. 23. This is a broad overstatement of the medical record evidence. Plaintiff bases this claim in part on the medical interrogatory provided by Dr. Vitolo and on hearing testimony provided by Dr. Chandrasekhar. *Id.* However, while Dr. Vitolo's responses are certainly very favorable to Plaintiff, Dr. Chandrasekhar's were far more equivocal. For example, when questioned by ALJ Koennecke, Dr. Chandrasekhar had the following exchange:

> Q: Given all that, given all the hospitalizations, given all the complaints and the ER and the ambulances, if in fact she has this somatic disorder, in a job situation, she would not be able to work at any kind of appropriate or consistent pace, correct?
>
> A: I'm tending to say yes, but the thing is, it would have been better if a psychiatrist was going to testify.

Tr. at pp. 39-40.

Although Dr. Chandrasekhar indicated that a somatization disorder would likely be the only explanation for the constellation of symptoms experienced by Plaintiff, she also declined to provide a concrete answer as to whether this condition would

significantly impact Plaintiff's ability to maintain pace at work, couching her opinion with the preface that she felt the question was better answered by a psychiatrist. Tr. at pp. 39-40. In contrast, Dr. Vitolo stated explicitly that in his opinion, the Plaintiff would not be "capable of functioning independently, appropriately and effectively, 8 hours per day, 5 days per week, on a sustained basis." Tr. at p. 1219. Given the factual disputes, determining the extent to which Plaintiff's ability to work at a sustained pace is impacted by the presence of the somatic disorder is a province better left to the ALJ on remand.

Defendant also presents factual disputes regarding Plaintiff's abilities to understand, remember, or apply information; interact with others; and adapt or manage herself. Def.'s Mem. of Law at pp. 12-13. The Court will not address each of these disputes except to say that based on this record, it has not been conclusively established that Plaintiff is unable to work in any capacity. Remaining questions of fact and conflicting medical opinions are more appropriately resolved by the ALJ on remand.

The Court is mindful of the significant delay that Plaintiff has experienced in this case, and "of the often painfully slow process by which disability determinations are made, and that a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Michaels v. Colvin*, 621 Fed. Appx. 35, 41 (2d Cir. 2015) (quoting *Butts v. Barnhart*, 388 F. 3d 377, 387) (2d Cir. 2004)). However, the delay itself is not a sufficient reason to overlook factual disputes in the record that are better left to the determination of the ALJ. *Parker v. Harris*, 626 F. 2d at 231.

On remand, the Court directs the Commissioner to determine the proper weight to be given to Dr. Vitolo's opinion, and whether Plaintiff has met the listing criteria for Listing 12.07.  To the extent that the record is unclear or incomplete, the Commissioner has an affirmative duty to fill any clear gaps in the administrative record.  *Selian v. Astrue*, 708 F. 3d at 420.  Finally, both parties agree that SSA policies prevent the ALJ who previously heard this case twice from conducting a third hearing.  Pl.'s Mem. of Law at p. 2, Def.'s Mem. of Law at p. 3.  Therefore, on remand, the case should be assigned to a new ALJ.

### IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED in part and DENIED in part**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REVERSED** and the case is **REMANDED** pursuant to sentence four for further proceedings; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: March 7, 2022
      Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge